# IN THE UNITED STATES DISTRICT COURT

# FOR THE DISTRICT OF NEW MEXICO

UNITED STATES OF AMERICA;

    Plaintiff,

vs.                                                                                                                           No. CR 19-1994 JB-1

JOELSON TALK,

    Defendant.

## MEMORANDUM OPINION AND ORDER

**THIS MATTER** comes before the Court on the United States' Objection to the PSR, filed November 16, 2020 (Doc. 107)("Objection"). The primary issue is whether the Court should apply a 4-level offense level enhancement pursuant to U.S.S.G. § 2A2.2(b)(2)(B), because Defendant Joelson Talk's co-Defendant, Derwin Williams, used a knife during the underlying offense. See Objection at 1. The Court concludes that the offense level enhancement applies to Talk, because Williams' use of the knife was: (i) within the scope of the jointly undertaken criminal activity; (ii) in furtherance of that criminal activity; and (iii) reasonably foreseeable in connection with that criminal activity. See U.S.S.G. § 1B1.3(a)(1)(B). The Court therefore sustains the Objection.

The day after the United States filed the Objection, the United States Probation Office ("USPO") filed a second Presentence Investigative Report. See Presentence Investigation Report, filed November 17, 2020 (Doc. 109-1)("PSR"). The USPO updated the PSR to align with the Objection, stating that, in the first PSR, Talk's "total offense level of 19 was miscalculated and did not include the application of U.S.S.G. § 2A2.2(b)(2)(B)." Memorandum as to Joelson Talk (dated Nov. 17, 2020), filed Nov. 17, 2020 (Doc. 109). The following day, Talk filed a Reply in which he argues that "carrying a dangerous weapon was not in the scope of conspiracy, nor was it reasonably foreseeable that one would be used, and the 4 level enhancement for U.S.S.G

§ 2A2.2(b)(2)(B) should not apply." Reply to United States' Objection to the PSR at 3, filed November 18, 2020 (Doc. 111)("Reply").

The Plea Agreement, which Talk signed, describes the offense at issue:

> On or about April 23, 2017, I assaulted John Doe. I, along with two other individuals, went to John Doe's house, forced our way in, and hit and kicked John Doe Repeatedly. We went to his house to retrieve a firearm and to assault John Doe. I later found out John Doe suffered serious injuries, including fractures in two bones in the lumbar section of his spine, a broken tooth, laceration near his wrist that needed repair, three lacerations to his lip or mouth that needed repair, laceration to his forehead needing repair, concussion, pellet found in his scrotum, and possibly orbital and nasal fractures. I was intoxicated when the assault occurred.

Plea Agreement at 4-5, filed November 9, 2020 (Doc. 104)("Plea Agreement").

The Sentencing Commission provides that, "in the case of a jointly undertaken criminal activity (a criminal plan, scheme, endeavor, or enterprise undertaken by the defendant in concert with others, whether or not charged as a conspiracy)," the Court should calculate the base offense level and adjustments based upon "all acts and omissions of others that were -- (i) within the scope of the jointly undertaken criminal activity, (ii) in furtherance of that criminal activity, and (iii) reasonably foreseeable in connection with that criminal activity; that occurred during the commission of the offense of conviction . . . ." U.S.S.G. § 1B1.3(a)(1)(B). Here, the U.S.S.G. § 2A2.2(b)(2)(B) 4-level enhancement applies, because the three elements U.S.S.G. § 1B1.3(a)(1)(B) describes are satisfied.

Williams' use of the knife was "within the scope of the jointly undertaken criminal activity," and "in furtherance of that criminal activity," U.S.S.G. § 1B1.3(a)(1)(B), because the knife's use furthered Talk's, and Talk's co-Defendants' -- Marty Manuelito and Williams -- shared purpose to "injure and intimidate" the victim, J.C., United States v. Egbert, 562 F.3d 1092, 1098 (10th Cir. 2009)(concluding that a defendant was eligible for an offense level enhancement, although the defendant did not partake in an assault directly, because the defendant was engaged

in a conspiracy to harm non-white individuals, and "[a]n assault against a 'non-white' individual by co-conspirators is certainly related to the conspiracy to injure and intimidate 'non-whites'")(no citation for quotation). The jointly undertaken criminal activity in this case was "[a]ssault resulting in serious bodily injury." 18 U.S.C. § 113(a)(6). "Serious bodily injury" means "bodily injury which involves -- (A) a substantial risk of death; (B) extreme physical pain; (C) protracted and obvious disfigurement; or (D) protracted loss or impairment of the function of a bodily member, organ, or mental faculty . . . ." 18 U.S.C. § 1365(h)(3). Here, "[a]s a result of the assault, J.C. sustained a broken nose, multiple lacerations on his face and head that required stitches . . . a cut to his right wrist from the knife," "a footprint imprinted on his chest," PSR ¶ 22, at 7; "fractures in two bones in the lumbar section of his spine, a broken tooth, . . . concussion," and "possibly orbital and nasal fractures," Plea Agreement at 4-5. Following the assault, J.C. was "critically ill with a high probability of imminent or life-threatening deterioration." PSR ¶ 23, at 7. Williams' use of the knife was, therefore, within the scope of the "assault resulting in serious bodily injury," 18 U.S.C. § 113(a)(6), to which Talk pled guilty, because the knife, in combination with "hit[ting] and kick[ing] John Doe repeatedly," Plea Agreement at 4, injured seriously Doe, see PSR ¶¶ 22-23, at 7. See also United States v. Willis, 476 F.3d 1121, 1130 (10th Cir. 2007)(explaining that "'at sentencing the district court must make particularized findings tying the defendant to the relevant conduct used to increase the base level offense'")(quoting United States v. Green, 175 F.3d 822, 837 (10th Cir. 1999)). Similarly, the knife's use was in furtherance of the assault, because it advanced Talk and the co-Defendants' shared goal of "retriev[ing] a firearm and assault[ing] John Doe." Plea Agreement at 4. See United States v. Patton, 927 F.3d 1087, 1096 (10th Cir. 2019)(explaining that, where a co-Defendant's conduct sought to "advance" a conspiracy's "goals," the conduct "did further the jointly undertaken activity").

Williams' use of the knife was also reasonably foreseeable, because Talk, Manuelito, and Williams, planned to break into J.C.'s house, assault J.C., and retake a firearm they believed J.C. had stolen. See United States v. Old Chief, 571 F.3d 898, 902 (9th Cir. 2009)(explaining that it is "'reasonably foreseeable' that" the codefendant "would use a knife in furtherance of the joint criminal enterprise of the assault"), cert. denied, 558 U.S. 1016 (2009). In discussing offense level enhancements, the Sentencing Commission contemplated a situation similar to Talk's:

> For example, two defendants agree to commit a robbery and, during the course of that robbery, the first defendant assaults and injures a victim. The second defendant is accountable for the assault and injury to the victim (even if the second defendant had not agreed to the assault and had cautioned the first defendant to be careful not to hurt anyone) because the assaultive conduct was within the scope of the jointly undertaken criminal activity (the robbery), was in furtherance of that criminal activity (the robbery), and was reasonably foreseeable in connection with that criminal activity (given the nature of the offense).

U.S.S.G. § 1B1.3 n.3(D). Likewise, here, Talk, Manuelito, and Williams agreed to go to J.C.'s house "to retrieve a firearm and to assault John Doe." Plea Agreement at 4. Further, because Talk and the co-Defendants "agree[d] to commit" the assault on J.C. and to take a firearm from him, Williams' use of the knife was "reasonably foreseeable in connection with that criminal activity (given the nature of the offense)." U.S.S.G. § 1B1.3 n.3(D).

The Court applied a 4-level enhancement previously where "[i]n an enterprise that involved controlling and using women's bodies, it was reasonably foreseeable that" a co-Defendant "would assault women he was forcing to do sex work to ensure their subservience." United States v. Williams, No. CR. 17-2556 JB, 2020 WL 4016108, at *15 (D.N.M. July 16, 2020)(Browning, J.). See United States v. Benally, No. CR 14-3430 JB, 2015 WL 7814678, at *1, *8 (D.N.M. Nov. 20, 2015)(Browning, J.)(applying the U.S.S.G. § 2A2.2(b)(2)(B) enhancement "to a defendant who d[id] not use the weapon that his or her co-Defendant use[d] to commit an assault" where it was "reasonably foreseeable" to the defendant "that his co-Defendants might use the weapon in the

assault"). Here, Talk informed the USPO that he "had a knife with a wooden handle with 'swirls' and a black hatchet on the passenger floorboard of his vehicle when they went to J.C.'s house." PSR ¶ 30, at 9 (no citation for quotation). Following the assault, the officer who searched Talk's vehicle found "a knife, a pellet rifle," and "a black metal hatchet . . . ." PSR ¶ 17, at 6. J.C. also told the USPO that he was stabbed with "a fishing knife that was black and green," as well as a "kitchen knife." PSR ¶ 18, at 6-7. Because Talk drove Manuelito and Williams to J.C.'s house to assault J.C. with weapons in his vehicle, Talk could have reasonably foreseen that weapons would be used during the assault. See United States v. Benally, 2015 WL 7814678, at *7 ("When a defendant goes into a fight knowing that his co-Defendant is carrying weapons, he or she can reasonably predict that his or her co-Defendants may use weapons, even if the defendant does not know which weapon from among many he may choose."). In sum, "[n]othing in this record suggests that" Talk "was not aware of the knife, or that it was not reasonably foreseeable to him that the knife would be used in the attack . . . ." United States v. Old Chief, 571 F.3d at 902.

Accordingly, because the knife's use was within the scope of, in furtherance of, and a reasonably foreseeable part of, the assault, the Court sustains the Objection.

**IT IS ORDERED** that the United States' Objection to the PSR, filed November 16, 2020 (Doc. 107), is sustained.

_____
UNITED STATES DISTRICT JUDGE

*Counsel*:

Fred Federici
   Acting United States Attorney
Nicholas James Marshall
   Assistant United States Attorney
United State Attorney's Office
Albuquerque, New Mexico

    *Attorneys for Plaintiff*

Jack Mkhitarian
Jack Mkhitarian Attorney at Law LLC
Albuquerque, New Mexico

    *Attorney for the Defendant*